UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

RANDY SHINE,

                       Plaintiff,        **No. 1:15-cv-00864(MAT)**
                                                             **DECISION AND ORDER**
          -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                       Defendant.
───────────────────────────────────────

**INTRODUCTION**

Represented by counsel, Randy Shine ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**PROCEDURAL STATUS**

Plaintiff protectively filed applications for DIB and SSI on September 17, 2012, alleged disability beginning December 31, 2010, due to major depression, foot deformity, diabetes, arthritis in the feet and knees, high blood pressure, high cholesterol, and

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

neuropathy. The Commissioner denied these applications, and Plaintiff requested a hearing. On March 19, 2014, Administrative Law Judge Robert Harvey ("the ALJ") conducted a hearing at which Plaintiff appeared with his attorney and testified, as did impartial vocational expert Esperanza DiStefano ("the VE"). On May 7, 2014, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. (T.10-26). The Appeals Council denied Plaintiff's request for review on September 2, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely commenced this action.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2010, his alleged disability onset date. At step two, the ALJ then found that Plaintiff's diabetes mellitus, diabetic neuropathy, depression, and obesity were severe impairments. At step three, the ALJ determined that Plaintiff's impairments, alone or in combination, did not satisfy the criteria of any listed impairments. The ALJ gave particular consideration to Listing 9.08 (Diabetes mellitus) and Listing 12.04 (Affective disorders).

The ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to RFC to perform sedentary work except he could not work in areas with unprotected heights; could not work around heavy, moving or dangerous machinery; had occasional

limitations in bending, climbing, stooping, squatting, kneeling, balancing or crawling; could not climb ropes, ladders or scaffolds; had occasional limitations in the ability to reach in all directions dominant/non-dominant hand; had occasional limits in the ability in handling (gross manipulations) dominant/non-dominant; had occasional limitations in the ability in fingering (fine manipulations) dominant/non-dominant; had occasional limitations in the ability in feeling (skin receptors) dominant/non-dominant; had occasional limitations in pushing and pulling with the upper extremities; had occasional limitations in the ability to interact appropriately with the general public; had occasional limitations in dealing with stress; and could not work in areas where he would be exposed to cold or dampness. (T.17).

Plaintiff, who was 57 years-old on the onset date of December 31, 2010, was a high school graduate with at least four years of college. He had past relevant work as a house manager and shipping and receiving clerk. At step four, the ALJ relied on the VE's testimony to find that Plaintiff could perform his past relevant work as a shipping and receiving clerk as he actually performed it. (T.22). Although the Dictionary of Occupational Titles ("DOT") classifies shipping clerk as a medium exertional level job, the ALJ found that Plaintiff's testimony established that he actually performed it at the sedentary level. Accordingly,

the ALJ did not proceed to step five, and entered a finding of "not disabled."

## DISCUSSION

### I. Failure to Weigh the Opinion of the State Agency Review Psychiatrist (Plaintiff's Point I)

Plaintiff asserts that the ALJ committed legal error in failing to mention the opinion evidence provided by State Agency Review Psychiatrist Juan C. Echevarria, M.D. As Plaintiff points out, 20 C.F.R. § 404.1527(e)(2)(ii) provides in relevant part that "[u]nless a treating source's opinion is given controlling weight," which did not occur here,

> the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration].

20 C.F.R. § 404.1527(e)(2)(ii).

Dr. Echeverria, the State agency medical consultant, reviewed the record and noted, among other things, the opinion of consultative psychologist Dr. Thomas Ryan that Plaintiff could perform simple and some complex tasks (T.67, 251). Dr. Echeverria then concluded that Plaintiff "appears capable of performing at least simple work-related tasks." (T.67) (emphasis added). Plaintiff contends the ALJ committed reversible error because he did not discuss Dr. Echeverria's opinion.

Plaintiff, however, has mischaracterized Dr. Echeverria's opinion, claiming that Dr. Echeverria found that Plaintiff was "*only* capable of simple work with simple tasks." (Plaintiff's Memorandum of Law ("Pl's Mem.") at 17 (emphasis added)). His argument, that the VE erred by finding that Plaintiff could perform skilled work, is based on a mistaken premise—that Dr. Echevarria opined that Plaintiff was limited to performing only perform simple work.

The Court agrees with the Commissioner that the more accurate interpretation of the statement that Plaintiff appears capable of performing "at least" simple work-related tasks is that, in Dr. Echeverria's opinion, simple work was the minimum, not the maximum, skill-level that Plaintiff could perform. The ability to perform "at least" simple work-related tasks does not rule out the ability to perform detailed or complex tasks.[2] Because Dr. Echeverria's opinion is not consistent with the ALJ's RFC assessment, the Court finds that the ALJ's failure to specifically discuss it was harmless error. See, e.g., Christina v. Colvin, 594 F. App'x 32, 33-34 (2d Cir. 2015) (summary order) (rejecting claimant's argument that ALJ committed reversible error by dismissing a portion of an opinion by a consultative examiner and

---

[2] In this context, "at least" is defined as "1. [a]ccording to the lowest possible assessment; not less than[.]" See American Heritage Dictionary of the English Language (5th ed. 2011), available at https://www.thefreedictionary.com/at+leastat_least (last accessed Feb. 6, 2018).

-5-

failing to discuss portions of State agency psychologist's opinion where RFC assessment was consistent with both source's opinions).

## II. Failure to Weigh Statements Offered by Treating Physician That Plaintiff Is Disabled (Plaintiff's Point II)

Plaintiff contends that the ALJ erred by not weighing two disability forms issued by his primary care physician, Dr. Frank A. Ferraro. (T.218, 484). On December 27, 2010, Dr. Ferraro completed a claim form for New York State disability benefits, stating that he had first treated Plaintiff for his disability on December 13, 2010; that Plaintiff became "unable to work because of this disability" on December 13, 2010; and that Plaintiff "will be able to perform usual work" on June 30, 2011. (T.218).

On October 15, 2013, Dr. Ferraro completed the physician certification on Plaintiff's application to have his Federal student loans discharged based on a permanent and total disability. (T.484). The form states that in order to qualify for a discharge, the applicant "must be unable to engage in any substantial gainful activity (as defined in Section 5) by reason of a medically determinable physical or mental impairment that (1) can be expected to result in death; (2) has lasted for a continuous period of not less than 60 months; or (3) can be expected to last for a continuous period of not less than 60 months." (T.484). Dr. Ferraro signed the certification at the bottom of the form, and stated that Plaintiff "ambulates with great difficulty" but did not indicate

any other functional limitations. (T.484). The diagnoses listed were rheumatoid arthritis, diabetes, hypertension, and depression.

At the time the ALJ decided Plaintiff's claim, the Social Security Administration "recognize[d] a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). The regulations in effect at the relevant time "advise[d] claimants that 'a treating source's opinion on the issue(s) of the *nature and severity of your impairment(s)*' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'" Id. (quoting 20 C.F.R. § 404.1527(d)(2) (emphasis in Green-Younger)). However, "'[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" Id. (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)).

The 2010 form completed by Dr. Ferraro simply provided an opinion by Dr. Ferraro that Plaintiff is disabled from working. A treating source's statement that a claimant "'is disabled' . . . is not considered a 'medical opinion' under the treating physician's rule, and is not entitled to controlling weight because it represents an opinion on an issue reserved to the Commissioner." Adamski v. Barnhart, 404 F. Supp.2d 488, 492 (W.D.N.Y. 2005)

(citing 20 C.F.R. §§ 404.1527(e); 416.927(e) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled.")); see also Earl-Buck v. Barnhart, 414 F. Supp.2d 288, 293 (W.D.N.Y. 2006) ("Because the opinions of Drs. Landfried and Kelly that plaintiff was 'totally disabled' are not 'medical opinions' under 20 C.F.R. § 404.1527(a)(2), the ALJ was not required to accord them any significant weight under the treating physician's rule. Nor was the ALJ required to state reasons on the record for not doing so."). In the 2010 form, Dr. Ferraro offered no assessment regarding the "nature and severity" of Plaintiff's impairments and thus offered the ALJ nothing to weigh. The Court finds that there was no legal error by the ALJ in regard to Dr. Ferraro's 2010 form.

With regard to the 2013 form, again, Dr. Ferraro's certification that Plaintiff is disabled—as defined by an entity other than the Social Security Administration—is not entitled to any significant weight. See, e.g., Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) (unpublished opn.) ("[Treating physician] Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(e)(1); Snell, 177 F.3d at 133); Crowe v. Comm'r of Soc. Sec., No. 6:01-CV-1579(GLS), 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (rejecting "treating physician" argument based on

Workers' Compensation forms filed by claimant's doctor in which he indicated (by way of checking a box) that she was "totally" disabled; noting that the opinions were rendered in the context of claimant's Workers' Compensation claim, "which is governed by standards different from the disability standards" under the Act) (citation and footnote omitted). In his decision, the ALJ did not explicitly weigh the 2013 form, but mentioned Dr. Ferraro's statement therein to the effect that Plaintiff "ambulate[d] with great difficulty." (T.21). Absent from this form are any specific limitations on Plaintiff's ability to walk, e.g., how long he could walk at a time and how long he could walk, in total, in a day. Dr. Ferraro thus offered little information for the ALJ to consider in rendering his RFC assessment. In and of itself, Dr. Ferraro's notation that Plaintiff "ambulates with great difficulty" does not warrant a finding that Plaintiff cannot perform any gainful employment, and the ALJ limited Plaintiff to the lowest exertional category of work, which requires the least amount of walking. Therefore, the Court finds that any error in failing to specifically weigh the 2013 form issued by Dr. Ferraro was harmless.

**III. Failure to Develop the Record (Plaintiff's Point IV)**

Plaintiff contends that the ALJ abdicated his duty to develop the record by failing to seek another opinion from Dr. Ferraro,

since Dr. Ferraro "did not provide any functional limitations" in either the 2010 or 2013 forms he completed on Plaintiff's behalf.

"[*W*]*here there are deficiencies* in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); emphasis added; ellipsis in original). On the other hand, where the ALJ has "before him a complete medical history, and the evidence received from the treating physicians [is] adequate for him to make a determination as to disability[,]" Perez, 77 F.3d at 48, courts will conclude that "the ALJ satisfied his duty to develop the record[,]" id. (2d Cir. 1996).

"Although the Social Security regulations express a clear preference for evidence from the claimant's own treating physicians over the opinion rendered by a consultative examiner," Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (unpublished opn.) (citation omitted), the Second Circuit has stated that it "does not always treat the absence of a medical source statement from claimant's treating physicians as fatal to the ALJ's determination,: Id. (citing Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33-34 (2d Cir. 2013) (unpublished opn.)). This is one of those cases. Given the extensive medical record before the ALJ in this case, the Court finds that "there were no

'obvious gaps' that necessitate remand solely on the ground that the ALJ failed to obtain a formal opinion[,]" id., from Dr. Ferraro detailing Plaintiff's functional limitations. See id. (holding that where there were no "obvious gaps" in the "extensive record," remand of ALJ's decision solely to obtain a formal opinion from one of claimant's treating physicians regarding the extent of her impairments in the functional domain of caring for oneself was unwarranted); Tankisi, 521 F. App'x at 34 ("The medical record in this case is quite extensive. Indeed, although it does not contain formal opinions on Tankisi's RFC from her treating physicians, it does include an assessment of Tankisi's limitations from a treating physician, Dr. Gerwig. Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity.").

### IV. Failure to Fully Establish the Exertional Demands of Plaintiff's Past Relevant Work (Plaintiff's Point III)

Plaintiff contends that the ALJ erred at step four by failing to fully establish the exertional demands of Plaintiff's past relevant work as a shipping clerk. "'Pursuant to both case law and Social Security Ruling 82-62, in order to determine at step four whether a claimant is able to perform [his] past work, the ALJ must make a specific and substantial inquiry into the relevant physical

and mental demands associated with the claimant's past work, and compare these demands to the claimant's [RFC].'" Matejka v. Barnhart, 386 F. Supp. 2d 198, 204-05 (W.D.N.Y. 2005) (quoting Kerulo v. Apfel, No. 98 CIV. 7315 MBM, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted in original)). Once the demands of the claimant's past relevant work are ascertained, the ALJ "must. . .identify the [claimant's] ability to perform the specific work-related abilities on a function-by-function basis." Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Specifically, "the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Id. at *7.

In a Work History Report submitted with his initial application, Plaintiff was asked to "[e]xplain what you lifted, how far you carried it, and how often you did this." (T.196). In connection with the shipping clerk job, he wrote that described what he did "all day" as "packag[ing] materials to be shipped" and "[r]eceiv[ing] incoming materials." (Id.). He "lifted various parts weighing between 1 lb to 25 lbs" and "inserted parts in shipping crates[.]" (Id.) He did not explain how often he did this task. The

form asked him to "[c]heck the heaviest weight lifted," and Plaintiff checked the box for "20 lbs." (Id.). The form also asked him to "[c]heck the weight you frequently lifted," i.e., "from 1/3 to 2/3 of the workday." (Id.). Plaintiff checked the box for "[l]ess than 10 lbs." (Id.). He indicated that he stood for 3 hours and sat for 2 hours at that job.

At the hearing, the ALJ engaged Plaintiff in the following colloquy:

> [ALJ] . . . And how much weight did you lift, on the average, on the [shipping and receiving clerk] job, and not the heaviest, and not the lightest, and just the average weight?
>
> [Plaintiff] I'm going to say between 5 to 10. *I really didn't do nothing there* –
>
> [ALJ] Five to 10 pounds.
>
> [Plaintiff] — *but paperwork*.
>
> [ALJ] Would you say you were on your feet at least six hours in an eight hour day?
>
> [Plaintiff] No.
>
> [ALJ] Was it more of a — a sitting down, sitting down and sedentary?
>
> [Plaintiff] *I sat down*. The — the supervisor of that facility brought me over. Him and I had got a report at a previous place that I worked for him. He brought me there, and instructed me on what to do. I told him my limitation. He worked around me.
>
> [ALJ] So you would say you were — it was more of a sedentary type of job, is that correct? Do you know what I mean by sedentary?
>
> [Plaintiff] *Sitting*.

-13-

> [ALJ] All right. So it was sedentary. . . .

(T.41; emphases supplied).

Then, in connection with his application to the Appeals Council, Plaintiff submitted a November 14, 2014 letter from his former employer, Gary Sheedy, Vice President of Techmotiv Corporation, who indicated that Plaintiff's duties as a shipping clerk included "working on our loading dock, operating fork trucks, loading and unloading tractor trailers[.]" (T.503). According to his former employer, Plaintiff's "duties required him to be on his feet for long periods of time and have the ability to lift manually up to 75 lbs. routinely. . . ." (Id.). This letter is completely at odds with Plaintiff's own Work History Report and testimony about what he did during the day and the job's exertional requirements. Acceptance of it essentially means that Plaintiff's memory is either very faulty or he testified incorrectly at the hearing; either way, the Court would have to discount his testimony. The Court agrees with the Commissioner that the letter should not be given any weight since it appears to describe a different job than Plaintiff testified that he had.

The Court therefore turns to consideration of Plaintiff's testimony and Work History Report. According to Plaintiff, he "testified that he lifted on average 5-10 pounds *and* did nothing but paperwork[.]" (Plaintiff's Reply ("Reply") at 8 (citing T.41; emphasis in original)). However, it does not make sense to say that

Plaintiff "did *nothing but* paperwork" *and also* lifted five to ten pounds on average. If someone does "nothing but" paperwork, that implies that they did not do anything else. The Commissioner asserts that Plaintiff "did nothing but paperwork." Likewise, this is not an accurate reading of Plaintiff's testimony.

These competing interpretation point to a conclusion that Plaintiff's testimony is ambiguous. When read in tandem with the Work History Report, his testimony creates a question as to whether his past relevant work as he performed it is congruent with the exertional requirements of sedentary work. As noted above, Plaintiff in fact stated, "I really didn't do nothing there . . . but paperwork." (T.41). While he said he lifted on average between five to ten pounds, his testimony does not indicate that he lifted five to ten pounds frequently; rather, since he explained that he mostly did paperwork, the reasonable inference is that any lifting was infrequent. On the Work History Form, he stated that he frequently lifted less than ten pounds, which is consistent with sedentary work. However, he also wrote that the heaviest weight he lifted was twenty pounds, which is not consistent with sedentary work. In addition, Plaintiff stated on the form that he lifted parts weighing between one and twenty-five pounds, which is inconsistent with his previous statement, and also inconsistent with sedentary work.

While SSR 82-62 does not dictate that an ALJ, in assessing a claimant's past relevant work, must question the claimant about the maximum and minimum weights lifted and how frequently those amounts were lifted, it does state that "[d]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements *must be obtained* as appropriate." Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82-62, 1982 WL 31386, at *3 (S.S.A. 1982) (emphasis supplied). This information was not obtained in the present case. SSR 82-62 also notes that "[t]he claimant is the primary source for vocational documentation. . . ." Id. Here, the ALJ did not thoroughly question Plaintiff about the exertional demands of his past relevant work or attempt to reconcile the ambiguities in Plaintiff's statements, which resulted in a step four finding that the Court cannot say is supported by substantial evidence.[3] Accordingly, the Court finds that remand is warranted for the

---

[3]
As courts have recognized, "[t]here is a tension created when the mandate of S.S.R. 82–62 is transposed on claimant's step four burden of proof." Kerulo, 1999 WL 813350, at *8, n. 5 (quoting Henrie v. United States Dep't of Health and Human Servs., 13 F.3d 359, 361 (10th Cir. 1993)). However, the case law indicates that "this tension must be resolved in favor of the Social Security Ruling." Id. (collecting cases). "Rulings by the Social Security Administration are 'binding on all components of the Social Security Administration.'" Selmo v. Barnhart, No. 01 CIV. 7374 (SHS), 2002 WL 31445020, at *9, n. 2 (S.D.N.Y. Oct. 31, 2002) (quoting 20 C.F.R. § 402.35(b)(1),(2); citing Heckler v. Edwards, 465 U.S. 870, 873 n. 3 (1984)).

performance of a new step four determination. See, e.g., Matejka v. Barnhart, 386 F. Supp.2d 198, 205 (W.D.N.Y. 2005); Selmo, 2002 WL 31445020, at *9.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is reversed. Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is reversed to the extent that the matter is remanded for further administrative proceedings consistent with this decision and order.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 8, 2018
Rochester, New York.